## WAXMANN et al. v. COLUMBIA PICTURES CORPORATION et al.

### No. 1643.

District Court, E. D. Pennsylvania.

Aug. 6, 1941.

Carr & Krauss, George T. Steeley, and George P. Aarons, all of Philadelphia, Pa., for plaintiff.

Irving Moross, of New York City, and Wexler & Weisman and Morris M. Wexler, all of Philadelphia, Pa., for Columbia Pictures Corporation.

D. Benjamin Kresch, of Philadelphia, Pa., for Warner Brothers Circuit Management Corporation.

Milton A. Kamsler, of Philadelphia, Pa., for Weland Theatres Co.

BARD, District Judge.

Plaintiffs filed a complaint praying for an injunction enjoining and restraining the defendants from releasing, delivering, or exhibiting certain feature motion pictures at the New Embassy Theatre in Atlantic City, New Jersey, prior to the showing of such pictures in the theatres operated by the plaintiffs at that place.

At the hearing for a preliminary injunction, after the plaintiffs concluded their testimony and rested their case, defendants moved for a dismissal. The Federal Rules of Civil Procedure, rule 41(b), 28 U.S.C.A. following section 723c, provide that this may be done "* * * on the ground that upon the facts and the law the plaintiff has shown no right to relief".

Argument on the motion to dismiss was heard immediately and the defendants raised the additional question of jurisdiction on the ground that some of the plaintiffs and one of the defendants were citizens of the same state. Whereupon the plaintiffs, over the objection of the defendants, moved to amend the bill by withdrawing therefrom, as one of the parties defendant, the Weland Theatre Co.

The three motions presented to the court will be considered.

I make the following special findings of fact:

1. The plaintiffs Harry I. Waxmann, Rose Waxman, Sylvia Waxman and Jack Waxman are citizens of Atlantic City, New Jersey.

2. The plaintiffs Emanuel O. Munzer and Sophia Munzer are citizens of Philadelphia, Pennsylvania.

3. The plaintiffs are a copartnership, trading as Hacco Theatres, operating Motion Picture Theatres in Atlantic City, New Jersey, and operate the Hollywood Theatre at 1527 Atlantic Avenue, the Astor Theatre at 619 Atlantic Avenue, and the Cinema Theatre at 1839 Atlantic Avenue.

4. The defendant Columbia Pictures Corporation is a corporation organized and existing under and by virtue of the laws of the State of New York, and is engaged in the business of producing and distributing motion pictures.

5. The defendant Columbia Pictures Corporation has an agent and transacts business in the City and County of Philadelphia, Pennsylvania.

6. The defendant Warner Bros. Circuit Management Corporation is a corporation organized and existing under and by virtue of the laws of the State of New York, and is engaged in the business of exhibiting motion pictures, and acts as a booking agent for the motion picture theatres owned and operated by the exhibition interest of Warner Bros. Pictures, Inc., and its subsidary and associated companies. It has an agent and transacts business in the Eastern District of Pennsylvania, with offices in this District and State.

7. The defendant Weland Theatre Co. is a corporation organized and existing under and by virtue of the laws of the State of New Jersey, and is engaged in the business of operating a motion picture theatre, the New Embassy, in Atlantic City, New Jersey.

8. The matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

9. The defendant Columbia Pictures Corporation on December 13, 1940, entered into a contract with Hollywood Amusement Co., a New Jersey corporation, to license for exhibition and release to Hollywood during the period January 1, 1941, to September 30, 1941, forty-four feature pictures of which number Hollywood obligated itself to play thirty-four pictures at the Hollywood or Cinema Theatres.

10. The contract provided under "Run-Clearance and Additional Provisions" that the feature pictures produced and released by the defendant Columbia Pictures Corporation were to be exhibited at the Hollywood Theatre "14 days after first run Atlantic Avenue, if any, 7 days before Lyric, Palace, Alan, Ventnor, Margate".

11. The defendant Columbia Pictures Corporation on December 13, 1940, entered into a contract with Astor Amusement Co., a New Jersey corporation, to license for exhibition and release to Astor during the period January 1, 1941, to September

30, 1941, forty-four feature pictures of which number Astor obligated itself to play thirty-four pictures at the Astor Theatre.

12. The contract provided "Run-Clearance and Additional Provisions" that the feature pictures produced and released by the defendant Columbia Pictures Corporation were to be exhibited at the Astor Theatre "7 days after first run Atlantic Avenue, if any, 7 days before Lyric, Capitol, Palace, Alan, Ventnor, Margate. It is agreed that clearance listed for Astor over Capitol Theatre follows only two pictures which do not play first-run on Atlantic Avenue at the Capitol".

13. The contracts both provided in the seventh paragraph thereof: "Clearance and Run-Seventh. The Distributor agrees not to exhibit or grant a license to exhibit any of said motion pictures for exhibition in conflict with the 'run' or prior to the expiration of the 'clearance period' if any in the Schedule specified at any Theatre therein named or within the territorial limits therein specified. Such period of clearance as to each of said motion pictures shall be computed from the last date of the exhibition thereof licensed thereunder. If clearance is granted against a named theatre or theatres indicating that it is the intention of the Distributor to grant such clearance against all theatres in the immediate vicinity of the Exhibitor's theatre then unless otherwise provided in the Schedule, such clearance shall include any theatre in such vicinity thereafter erected or opened."

14. Before July, 1941, pictures of the Columbia Pictures Corporation were exhibited "first run" on Atlantic Avenue in the Colonial Theatre adjacent to the plaintiff's Hollywood Theatre, prior to exhibition in the Hollywood and Astor Theatres.

15. On June 7, 1941, the New Embassy Theatre opened on Atlantic Avenue about one-half city block from the Hollywood Theatre and about nine squares from the Astor Theatre.

16. "She Knew All the Answers" a Columbia picture was played first run on Atlantic Avenue from July 11 to 17 in the New Embassy Theatre before it was offered for release and exhibition to either the Astor or Hollywood Theatres.

17. On July 15, 1941 the Hollywood Amusement Company and the Astor Amusement Company assigned their interest in the contracts mentioned in paragraphs 9, 10, 11, 12, and 13 to the plaintiffs, who assumed the obligations of the assignors to the Columbia Pictures Corporation. Notice of the assignments and assumption of obligations was served on Columbia Pictures Corporation on July 22, 1941.

18. "They Dare Not Love" a Columbia picture was played first run on Atlantic Avenue from July 25 to 31 in the New Embassy Theatre before it was offered for release and exhibition to either the Astor or Hollywood Theatres.

19. The Columbia Pictures Corporation has indicated that it intends to offer more pictures for first run in the New Embassy Theatre prior to exhibition in the Hollywood and Astor Theatres.

20. The Capitol Theatre is a theatre exhibiting motion pictures on Atlantic Avenue and is not mentioned in the clearance clause of the Hollywood contract.

### Discussion.

The plaintiffs complain that the Columbia Pictures Corporation has during the month of July released for exhibition certain moving pictures in the New Embassy Theatre prior to the time that they were released for exhibition in the plaintiffs' theatres. The defendants intend to continue to do so. Is this action on the part of Columbia Pictures Corporation a breach of the contract they hold with the plaintiffs?

The contracts between Columbia Pictures Corporation and the operators of the Astor and Hollywood Theatres deal with two elements, "run" and "clearance". By run is meant the order of exhibition as first run, second run, third run. By clearance is meant the interval of time between the conclusion of the exhibition of a picture in one theatre and the commencement of exhibition at another theatre.

The Astor contract provides the run for that theatre shall be "7 days after first-run Atlantic Avenue, if . any", and the Hollywood contract 14 days after first run. Neither contract contains any limitation or restriction with respect to the designation of the first run theatre. Prior to the opening of the New Embassy Theatre, Columbia Pictures were exhibited first run on Atlantic Avenue at the Colonial Theatre. This fact confers no contrac-

tual rights upon the Astor Theatre to require that the pictures continue to be exhibited first run at the Colonial Theatre exclusively. The contract is not only barren of any prohibition upon Columbia's right to enter into a first run contract with any theatre other than the Colonial, but expressly recognizes that other theatres might play first run. The Astor contract provides that Columbia Pictures may play first run on Atlantic Avenue at the Capitol.

Columbia was not limited to the Colonial Theatre for first run exhibitions under the terms of the Astor and Hollywood contracts. In releasing pictures to the New Embassy Theatre prior to the Astor or Hollywood Theatres, Columbia committed no breach of either the Astor or Hollywood contracts.

Plaintiffs contend, however, that as the New Embassy Theatre has been opened since the date of the contract the seventh printed clause of the contracts prohibits the New Embassy Theatre from exhibiting any pictures prior to exhibition in the Astor and Hollywood Theatres. This clause provides " * * * If clearance is granted against a named theatre or theatres indicating that it is the intention of the Distributor to grant such clearance against all theatres in the immediate vicinity of the Exhibitor's theatre then unless otherwise provided in the Schedule, such clearance shall include any theatre in such vicinity thereafter erected or opened". This printed clause, identical in the two contracts, must be read in connection with the typewritten clause on clearance which states that after exhibition in the Astor, it is given seven days clearance before the picture can be exhibited in certain named theatres. The Hollywood is given the same clearance but omits one theatre named in the Astor contract.

The quoted clause above refers specifically to clearance and cannot have any bearing on Columbia's right to release pictures for first run in the New Embassy Theatre. It refers to the interval of time that must elapse after the conclusion of the second run exhibition of a picture in the Astor or Hollywood Theatres and before it can be exhibited in any other theatre in which it has not been exhibited. While the contract does not restrict Columbia from releasing pictures for first run in the Colonial or the New Embassy, the plaintiffs are entitled to have the pictures after first run in either Colonial or the New Embassy, for second run. Columbia for instance cannot release a picture to Colonial for first run, then to the New Embassy for second run, and postpone the Astor and Hollywood to third run.

■ My conclusion is that the plaintiffs are not entitled to an injunction restraining the defendants from releasing pictures to the New Embassy Theatre for first run prior to such release for exhibition in the Astor and Hollywood Theatres, but that they are entitled to an injunction, if they so desire, restraining the defendants from releasing for exhibition in the New Embassy Theatre pictures prior to the Astor and Hollywood Theatres such pictures that have been exhibited for first run in a theatre other than the New Embassy.

I would have granted the defendants' motion for dismissal of the complaint had it not been for the limited proviso expressed in the preceding sentence.

I have not discussed the question of jurisdiction, as both sides indicated a desire to have the matter disposed on its merits.

### Conclusions of Law.

1. The motion for a preliminary injunction enjoining and restraining the defendants from releasing, delivering, and exhibiting motion pictures at the New Embassy Theatre prior to at least seven days subsequent to the last showing of such picture at either the Hollywood or Astor Theatres is denied, but is granted as to such pictures which have had a first run in some theatre other than the New Embassy.

2. The plaintiffs to pay one-half the costs to this suit and the defendants one-half.

An order may be submitted by either side upon notice to the other side.